In the Matter of **LEW MARK CLEAN-ERS CORPORATION, Debtor.**

**Bankruptcy No. 187–71390–260.**

United States Bankruptcy Court, E.D. New York.

May 17, 1988.

Horing & Welikson by Delsia G. Marshall, Forest Hills, N.Y., for landlord.

Schwartz, Sachs & Kamhi, P.C. by Gary B. Sachs, Carle Place, N.Y., for debtor.

CONRAD B. DUBERSTEIN, Chief Judge.

The matter under consideration in this Chapter 11 case is a motion to vacate the automatic stay filed by Joseph T. Macari ("Macari"), landlord of the premises of Lew Mark Cleaners Corporation ("Lew Mark"), the debtor herein. Macari seeks relief from the stay to allow him to proceed upon a warrant of eviction, issued pre-petition, to recover possession of a non-residential leasehold located at 149–09 and 149–11 Union Turnpike, Flushing, New York. The debtor cross-moves to assume the lease based on its conduct during the 60 day statutory period after the petition was filed. For reasons hereinafter set forth, the landlord's motion to lift the stay is granted and the debtor's cross-motion to assume the lease is denied.

## FACTS

Lew Mark filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 30, 1987. The debtor continues to conduct its business at the aforementioned premises under a lease which was due to expire on October 14, 1988 with an option for an additional five year extension.

Prior to the filing, Macari commenced a summary proceeding in the Civil Court, County of Queens, for nonpayment of rent. This action resulted in a default judgment in the amount of $2,547.56 and the issuance of a warrant of eviction on June 23, 1987, seven days before the above captioned case was instituted in the bankruptcy court. Execution of the warrant was stayed by this filing.

Macari brings the instant motion to vacate the automatic stay to permit execution of the outstanding warrant, claiming that the debtor no longer has any rights of

tenancy in accordance with the warrant of eviction and applicable state law. Lew Mark counters the landlord's motion by seeking to have the court hold that the lease in question was assumed by the debtor. The debtor contends that although a formal motion to assume was not filed within the 60 day time limit imposed by statute, its actions during the 60 day period constituted a valid assumption of the lease. It further asserts that the landlord's acceptance of money tendered by the debtor and earmarked for post-petition rent waives Macari's rights to terminate the leasehold.

Subsequent to the Chapter 11 filing on June 30, 1987, rental payments for the first two months, July and August, were tendered and accepted by Macari. It is unclear whether the check tendered by the debtor for September's rent was deposited by the landlord. Checks were also tendered to the landlord for the months of October, November and December 1987 but never deposited.

The first notice of the motion to vacate the stay was filed by Macari with this court on August 3, 1987. In response the debtor prepared an "Affidavit in Opposition," dated August 4, 1987, which was given to Macari's counsel but never filed with this court. In the affirmation opposing the landlord's motion to lift the stay, the debtor stated: "FURTHER, the debtor asks the Court leave to assume this lease, which is essential to the estate." The last paragraph of the affidavit states: "WHEREFORE, we respectfully request that an order be made, denying the motion of this landlord for an order vacatingt (sic) the automatic Stay, etc., and granting the Debtor leave to assume the unexpired portion of this lease, etc. . . . ." A second motion to vacate the stay by the landlord was filed on October 15, 1987 and an affirmation in opposition was subsequently filed by the debtor, which admits that a formal motion to assume the lease was never filed but cites the August 4, 1987 affidavit to preclude the automatic rejection of the lease.

## DISCUSSION

There appears to be no end in the litigation arising out of 11 U.S.C. § 365(d)(4). Time after time bankruptcy practitioners and debtors-in-possession have tested the equitable powers of the bankruptcy court by failing to follow the requirements of this section. Since the addition of this section in the Bankruptcy Amendments and Federal Judgeship Act of 1984, courts have struggled to find solutions where infractions of the statutory requirements are weighed against the importance of leaseholds to debtors' reorganizations.

Section 365(a) of the Bankruptcy Code authorizes the trustee (or in this case the debtor-in-possession), subject to the court's approval, to assume or reject an executory contract or an unexpired lease within 60 days from the order for relief. Prior to assuming a lease it must be determined whether the lease was terminated pre-petition under applicable state law, and if so, whether the termination could be voided under a state anti-forfeiture provision or other applicable state law. *City of Valdez, Alaska v. Waterkist Corp. (In re Waterkist Corp.)*, 775 F.2d 1089, 1091, 13 B.C.D. 1386, 1387 (9th Cir.1985). The purpose of this approach is to prohibit the debtor from using the bankruptcy process to assume a lease which would not have been assumable absent the bankruptcy proceeding and to allow the debtor the same opportunities to avoid forfeiture as it would receive under state law. *Id.* at 1091, 13 B.C.D. at 1388.

It is Macari's contention that his lease with Lew Mark was terminated upon issuance of the warrant of eviction, leaving no lease for the debtor to assume. Proceedings to recover possession of leased property in the State of New York are governed by Article 7 of the Real Property Actions and Proceedings Law ("RPAPL"). Specifically, § 749(3) prescribes the effect of a warrant of eviction and provides in part:

The issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of land-

lord and tenant, but nothing contained herein shall deprive the court of the power to vacate such warrant for good cause shown prior to the execution thereof....

This is not the first time this court has considered § 749(3). *Bucknell Leasing Corp. v. Darwin (In re Darwin),* 22 B.R. 259 (Bkrtcy.E.D.N.Y.1982), held, unless good cause is otherwise shown, the debtor's interest in a lease expired upon the pre-petition issuance of a warrant, rather than upon the execution of a warrant. *Id.* at 262. "[T]he bankruptcy court cannot resurrect a lease terminated prior to the filing of the petition." *Id.* at 263.

■ The landlord in this case further argues that if the lease survived the issuance of the warrant, the lease is deemed rejected by the debtor's failure to commence a motion to assume the lease within 60 days of the filing of its petition. The debtor conversely asserts that its actions within this period manifested its intent to assume the lease, thereby negating the need to file a formal motion.

Section 365(d)(4) of the Bankruptcy Code provides in relevant part:

[I]n a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60 day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

This section must be read together with Bankruptcy Rule 6006 which deems the assumption of an unexpired lease a contested matter requiring a formal motion on notice pursuant to Rule 9014. Moreover, Bankruptcy Rule 9013 requires that a motion be made in writing, unless made during a hearing, and must state with particularity the grounds therefore and the relief sought.

Under the former Bankruptcy Act of 1898, many courts held that the assumption of an executory contract could be established by conduct. *See, e.g., Vilas and Sommer, Inc. v. Mahony (In re Steelship Corp.),* 576 F.2d 128 (8th Cir.1978); *Brown v. Presbyterian Ministers Fund,* 484 F.2d 998 (3d Cir.1973); *Nostromo, Inc. v. Fahrenkrog,* 388 F.2d 82 (8th Cir.1968). The intention behind the adoption of § 365(d)(4) was to protect lessors from delay and uncertainty surrounding assumption and rejection of nonresidential leases and to decrease attendant recovery problems by requiring expeditious assumption. *Riddle v. Aneiro (In re Aneiro),* 72 B.R. 424, 427, 15 B.C.D. 1069, 1071 (Bkrtcy.S.D.Cal.1987). Certainty and reasonableness are also assured by the requirement of a formal motion as dictated by Bankruptcy Rule 6006.

An overwhelming majority of courts have held that pursuant to the existing Bankruptcy Code and Rules, the only method of declaring an intention to assume a lease is by timely filing a formal motion. *Treat Fitness Center, Inc. v. Rainbow Investment Co. (In re Treat Fitness Center, Inc.),* 60 B.R. 878, 879, 14 B.C.D. 632, 633 (Bkrtcy.App. 9th Cir.1986) ("To not follow these rather explicit rules would be to lead us back into the morass attempting to judge the meaning and import of the conduct and conversations of the parties"); *Mutual Life Ins. Co. of New York v. Dublin Pub, Inc. (In re Dublin Pub, Inc.),* 81 B.R. 735 (Bkrtcy.N.D.Ga.1988); *In re Ok Kwi Lynn Candles, Inc.,* 75 B.R. 97 (Bkrtcy.N.D.Ohio 1987); *In re BDM Corp.,* 71 B.R. 142 (Bkrtcy.N.D.Ill.1987); *In re J. Woodson Hays, Inc.,* 69 B.R. 303, 15 B.C.D. 597 (Bkrtcy.M.D.Fla.1987).

In reaching the same conclusion, some courts have reasoned that the desired policy underlying the requirement of a formal motion is the need for prior court approval. *Swiss Hot Dog Co. v. Vail Village Inn, Inc. (In re Swiss Hot Dog Co.),* 72 B.R. 569 (D.Colo.1987), held that the trustee or debtor-in-possession may not unilaterally assume a lease. To violate § 365(a)'s clear mandate of court approval would force the bankruptcy court to retroactively "rubber stamp" an assumption by conduct. The court further deduced that by usurping the bankruptcy court's prior approval, the court would not be able to assure that all

defaults were cured prior to assumption as imposed by § 365(b)(1). *Swiss Hot Dog,* 72 B.R. at 571–72; *Sealy Uptown v. Kelly Lyn Franchise Co., Inc. (In re Kelly Lyn Franchise Co., Inc.),* 26 B.R. 441 (Bkrtcy. M.D.Tenn.), *aff'd,* 33 B.R. 112 (M.D.Tenn. 1983).

In the instant case, the debtor relies upon *In re Ro–An Food Enterprises Ltd.,* 41 B.R. 416 (E.D.N.Y.1984), and *In re Re–Trac Corp.,* 59 B.R. 251, 14 B.C.D. 339 (Bkrtcy.Minn.1986). These decisions cannot be followed. The *Ro–An* case was decided prior to the 1984 Amendments. Moreover, the case was faced with very unusual circumstances such as the intervening litigation of threshold issues and the incarceration of the debtor's principal which made it difficult for the trustee to formally assume the lease within the 60 day period. The court recognized that assumption by conduct was by no means the preferred mode of assuming the lease and limited its holding to the particular facts before it. *Id.* at 419. In the present case, no reason was shown why a formal motion could not have been made within the allotted time.

*Re–Trac* states the test under § 365 is whether the trustee or debtor-in-possession has indicated assumption or rejection by an unequivocal act. 59 B.R. at 255. It must be noted that the court found that the debtor's actions, including the notification to the landlord that it intended to continue operation of the leased premises, "simply inferred that the debtor intended to remain...." *Id.* However, the debtor's conduct did not of itself "constitute an unequivocal demonstration of its intention to assume the lease." *Id.* The court made no attempt at specifying what acts short of a formal motion would serve as unequivocal manifestations of the debtor's intent to assume the unexpired lease.

The motivation behind formalizing the requisite actions for assuming or rejecting a lease was to avoid situations such as the one at bar. The affirmation purporting to show an unequivocal intent to assume the subject lease is far from incontrovertible. The request for leave to assume the lease, hidden in an affirmation in opposition to Macari's motion to lift the stay, surely would have been filed with the court before the expiration of the 60 day period if intended as a cross-motion to assume the lease. This affidavit fails to satisfy even the most lenient of tests for assumption. The lack of adherence to the fairly simple guidelines set forth in Bankruptcy Rule 6006, the filing of a formal motion with notice to parties in interest, cannot be condoned and a return to the pre-Code confusion is not warranted. Therefore, the affidavit cannot stand alone to constitute an assumption of the unexpired lease.

■ The debtor's final submission is that the landlord waived his rights to oppose the assumption by accepting rent after the lease was "deemed rejected" by the passing of the 60 day period. By doing so, Lew Mark argues, the landlord agreed to an assumption of the unexpired portion of the leasehold.

Courts are generally in accord that acceptance of rent during the 60 day period following the order for relief is not tantamount to a waiver by the landlord of an assumption of an unexpired lease. *In re Ok Kwi Lynn Candles, Inc.,* 75 B.R. 97, 100 (Bkrtcy.N.D.Ohio 1987); *Corporate Property Investors v. Chandel Enterprises (In re Chandel Enterprises),* 64 B.R. 607, 610; *In re T.F.P. Resources, Inc.,* 56 B.R. 112, 13 B.C.D. 1104 (Bkrtcy.S.D.N.Y. 1985). These holdings are derived from a clear reading of the anti-waiver provision of § 365(d)(3). This section requires a debtor-in-possession to timely perform all obligations arising from and after the order for relief under an unexpired lease of nonresidential real property "until such lease is assumed or rejected...." The statute further states: "Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under this lease or under this title." This section is clear and unambiguous in not recognizing waiver by the landlord during this period.

The effect of the landlord's acceptance of the debtor's rent beyond the 60 day period, however, is not provided for in the Code.

Courts are split in determining whether acceptance of such constitutes a waiver of the automatic rejection afforded by § 365(d)(4).

 ▮ *In re Las Margaritas, Inc.,* 54 B.R. 98 (Bkrtcy.Nev.1985), concluded that § 365(d)(3) extended to payments accepted after the 60 day period and mere acceptance of rental payments cannot estop lessors from claiming rejection and termination of a lease pursuant to § 365(d)(4) regardless of the lessor's knowledge of the bankruptcy. *See In re BDM Corp.,* 71 B.R. 142, 145 (Bkrtcy.N.D.Ill.1987); *In re Spats Restaurant & Saloon,* 64 B.R. 442, 445 (Bkrtcy.Nev.1986). *In re Re–Trac Corp.,* 59 B.R. 251, 14 B.C.D. 339 (Bkrtcy. Minn.1986), reasoned that it is unreasonable that landlord's action or inaction, even after the 60 day period, could breathe new life into that which was presumed to be terminated. Moreover, the court found that these payments must therefore be characterized as payments for the reasonable value for use of the premises as a month to month tenancy. *Id.* at 257, 14 B.C.D. at 343. The court in *Corporate Property Investors v. Chandel Enterprises, Inc. (In re Chandel Enterprises, Inc.),* 64 B.R. 607 (Bkrtcy.C.D.Cal.1986), looked to the 1984 Amendments and reasoned that allowing waiver and estoppel would defeat the legislative intent behind the automatic rejection extinguishing the debtor's interests in a leasehold.

This court is more inclined to follow Judge Buschman's well-reasoned decision in *In re T.F.P. Resources,* 56 B.R. 112, 13 B.C.D. 1104 (Bkrtcy.S.D.N.Y.1983), which concluded that since the 60 day termination rule is for the benefit of lessors, lessors can waive its application. If waiver was not applicable, even in extreme circumstances, harsh results are conceivable. One could imagine the inequities if a landlord accepted rental payments from a debtor/lessee for years during the pendency of a Chapter 11 reorganization, only to pull the rug out from under the debtor if the market value of the lease appreciated. The landlord would essentially reap a windfall and would have all the benefits of the bargain with the ability to terminate the contract at any time. Therefore, waiver should properly be a question of intent as manifested by the lessor's acts. *Id.* at 116, 13 B.C.D. at 1106. This test is the same analysis used in a lessor's alleged waiver of a forfeiture clause contained in a lease and in whether a lessor is estopped from asserting such a clause. *Id.; see B.J.M. Realty Corp. v. Ruggieri,* 326 F.2d 281, 282 (2d Cir.1964); *Realties 1430 v. Slaner (In re Duplan Corp.),* 473 F.Supp. 1089, 1093 (S.D.N.Y.1979); *In re Fifth Avenue Originals,* 32 B.R. 648, 656 (Bkrtcy.S.D.N.Y. 1983).

The acts of the landlord in the present case do not evince an intent for the lease to continue. The best showing of this is the motion made by the landlord, filed with this court within the initial 60 day period following the order for relief, to lift the stay in order to proceed on the warrant of eviction. Further evidence of the landlord's desire to sever its relationship with the debtor is Macari's deliberate holding of the undeposited checks tendered by Lew Mark for rental payments for October, November and December 1987.

Assuming that Macari accepted and deposited rent for the month of September, in view of the attempts by the landlord to sever the landlord/tenant relationship, it does not necessarily follow that the acceptance of the rent was a manifestation of the landlord's intent to continue under the terms of the lease. The court finds that the doctrine of waiver cannot be applied in this case.

Based on the foregoing, the landlord's motion to vacate the stay is granted with leave to seek the appropriate remedies under state law.

Submit an order consistent with this opinion.